IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MICHAEL SAMUEL JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-097 |
| | ) | |
| PHILLIP HALL, Warden, Calhoun | ) | |
| State Prison, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Calhoun State Prison in Morgan, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. The Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

This case challenges the validity of Petitioner's convictions for felony murder and possession of a firearm during a crime by a jury in McDuffie County, Georgia, after a trial concluding on January 18, 2008. Johnson v. State, 286 Ga. 787, 790 & n. 1, 692 S.E.2d 575, 578 & n.1 (2013). The Georgia Supreme Court provided the following description of facts based on the evidence at trial:

> On the evening of November 22, 2006, Missy Brooks, the wife of the victim, was driving in her car with Shamain Grimes when she struck a deer. The Grimes and Brooks families were together that day, preparing for the

Thanksgiving meal the next day. When Todd Brooks and Ted Grimes, Shamain's husband, learned of the accident, they decided to look for the deer. Ted Grimes testified that the men did not see the deer along the side of the road and so they asked permission of the landowner, Johnson, to look farther off the road. According to Grimes, Brooks knew Johnson and the other resident of Johnson's house, Roger Sturkey. Johnson agreed to help the two men find the deer and went to the back of the house to get his rifle, as Brooks and Grimes did not have a gun.

When Johnson stepped out, Rebecca Heacock, who was a life-long friend of the Brooks family, came into the room. Brooks told her she did not belong with Johnson, as she was 17 years old and Johnson was much older. Johnson then got in his truck, and Grimes, along with Brooks and Heacock, got into Grimes's truck. They began driving around the property trying to locate the deer. Grimes testified that Brooks repeatedly told Heacock that she did not belong at Johnson's house and that he wanted her to leave with him. After failing to find the deer, they drove back to Johnson's house. Heacock then agreed to leave with them, but said she needed to get her pocketbook and other things from the house.

Grimes stayed in the truck, and Brooks and Heacock walked into the house. Johnson had also returned to the house. Grimes heard Brooks tell Johnson that Heacock did not belong with him. Grimes could not hear Johnson's response, but he heard Brooks say, "if that's the way you want to handle it, we'll step outside."

A short time later, Grimes heard Brooks say, "Ted, get in here." Grimes then got out of the truck and went to the doorway of the house. He saw Johnson lower his rifle at Brooks. Johnson and Brooks exchanged words, and Brooks said, "all right, I'm leaving." Brooks walked to the door to leave the house, and Johnson hit him in the back of the head with the rifle butt. According to Grimes, Brooks came back up and caught the rifle, and Brooks and Johnson started fighting over it. Grimes gained possession of the rifle by helping Brooks during the struggle.

Brooks and Johnson then began swinging at each other. At one point, they both stumbled and fell into a room that was a combination bedroom/bathroom, with Brooks falling down first and Johnson falling on top of him. Grimes testified that Johnson got up, pulled out a pistol, took a step or two back, and started shooting Brooks. Grimes then ran out of the house, with Johnson pointing the pistol at him and yelling that he needed to leave. . . .

2

Heacock testified for the defense, stating that she had known the Brooks family a long time and that Todd Brooks was like a father to her. She stated that, when they went to search for the deer, she rode in Grimes's truck along with Brooks, who was drinking and threatened to "whip [Johnson's] ass." Heacock agreed to leave Johnson's home with Brooks, but stated that she first needed to retrieve some of her things. When they arrived back at the house, Heacock and Brooks entered and Brooks told Johnson that Heacock was coming with him. Johnson said that was fine, and Brooks then stated he was going to "still whip [his] ass" and hit Johnson in the back of the head.

Johnson and Brooks began to fight and struggle over a rifle. Heacock added that Grimes gained possession of the rifle and ran out of the house. Heacock said that she did not remember exactly what happened next, but that Johnson was in the kitchen and Brooks was coming through the kitchen doorway from the bedroom/bathroom when Johnson shot him. Heacock acknowledged that Johnson was not near Brooks when he shot him. Heacock claimed that she did not see Johnson do "anything other than defend himself."

Roger Sturkey, a friend of Johnson's who also lived in the house, testified that Grimes, Brooks, and Heacock were the first to return after the unsuccessful search for the deer and that he saw Heacock enter and Brooks run in after her, while Grimes stayed outside. When Johnson returned, Sturkey told him that Brooks had run into his home and that Grimes was stretching as if getting ready for a fight. When Johnson went inside, Sturkey heard Brooks tell Johnson he was going to "kick his ass." Sturkey then saw someone push Johnson into a door and saw Brooks and Johnson struggle over a rifle. Fearing he might be shot, Sturkey ran from the house and then heard gunfire.

Johnson testified that Brooks charged him and grabbed the rifle, that Grimes came into the house and the three of them struggled over the rifle, that Grimes and Brooks were hitting him, that he was struck in the head, and that the struggle ended up in the kitchen. Johnson added that he had a revolver in a kitchen drawer and that he reached for it and picked it up but lost the rifle to Grimes. He was then fighting with Brooks, and Grimes was standing behind him with the rifle. Someone hit him hard enough to make him "see stars," and he did not think the beating would stop.

Johnson testified that Brooks was on him, that "there was nothing [he] could do," and that he had no choice but to fire the revolver. He did not take aim, but just pointed and shot as fast as he could to get "[Brooks] off of [him]." Johnson then dropped the gun and ran out the back door of the house

to avoid Grimes, who still had the rifle. Johnson added that he went to his father's nearby home, and told his father he had shot Brooks.

Id. at 576-578.

Jacque Hawk represented Petitioner at trial. (Doc. no. 9-9, p. 6.) The jury found Petitioner not guilty of malice murder but guilty of felony murder (with aggravated assault as the underlying felony), aggravated assault, and possession of a firearm during the commission of a crime. Johnson, 692 S.E.2d at 576 n.1. The trial court sentenced Petitioner to life in prison for the felony murder conviction, which was merged with the underlying assault as a matter of law, and a consecutive five years in prison on the possession offense. Id.; (see also doc. no. 9-18, pp. 36-37.) Petitioner filed a motion for a new trial on February 6, 2008, and after retaining new appellate counsel, Brian Steel, he filed an amended motion for new trial on November 17, 2008. Johnson, 692 S.E.2d at 576 n.1; (see also doc. no. 1, p. 16.)

Petitioner raised general grounds—verdict contrary to the evidence, against the weight of the evidence, and contrary to law—as well as twenty-one ineffective assistance of trial counsel claims in his motion for a new trial. (See doc. no. 1, pp. 16-31.) The trial court held a hearing on December 13, 2011, and entered a written order denying the motion for new trial on April 7, 2009. Johnson, 692 S.E.2d at 576 n.1; (see also doc. no. 1, pp. 16-31). Petitioner then appealed to the Supreme Court of Georgia. Johnson, 692 S.E.2d at 576 n.1.

Mr. Steel also represented Petitioner on direct appeal and raised two enumerations of error:

(1)     Trial Counsel was ineffective because he failed to present material and

4

critical <u>Chandler v. State</u>, 405 S.E.2d 669 (1991), evidence in support of Petitioner's self-defense claim.

(2)     Trial Counsel was ineffective because he failed to call a police officer to corroborate Petitioner's testimony that he was severely injured during a violent attack by the deceased. Furthermore, the Prosecution had a duty not to argue that Petitioner did not sustain injuries because they possessed evidence concerning those injuries.

(Doc. no. 1, pp. 32, 50.)   On March 22, 2010, the Georgia Supreme Court rejected Petitioner's contentions and affirmed his convictions. See <u>Johnson</u>, 692 S.E.2d at 792-93.

Petitioner, represented by August Simeon III, then filed a state habeas corpus petition on December 8, 2010, in Macon County. (Doc. nos. 9-1, 9-2.) The state petition raised two grounds:

(1)     Appellate Counsel was ineffective because he failed to raise on direct appeal the issue of the trial court's refusal to charge the jury on the defense of habitation.

(2)     Appellate Counsel was ineffective because he failed to properly investigate the case and present evidence at the motion for new trial supporting Petitioner's innocence.

(Doc. no. 9-1, pp. 5, 9-11; doc. no. 9-2, p. 3.) Ultimately, Petitioner only proceeded on the first ground of the petition. (Doc. no. 9-3, p. 3.) The state habeas court conducted an evidentiary hearing on April 30, 2012. (<u>See</u> doc. no. 9-5.) Appellate counsel was not present, but was deposed by state habeas counsel at an earlier date and that deposition entered into evidence. (Doc. no. 9-30.) The state habeas court denied relief in a final order dated August 6, 2013. (Doc. no. 9-3.) The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on March 2, 2015. (Doc. no. 9-4.)

Petitioner, represented by Peter Johnson, then timely filed the above-captioned § 2254

petition. (Doc. no. 1.)  In his petition, Petitioner raises the following grounds for relief:

I.     Petitioner received ineffective assistance of trial counsel based on the failure to present witnesses to testify regarding prior acts of violence by the deceased against third parties.

II.

    a)    Petitioner received ineffective assistance of trial counsel based on the failure to present police witnesses to testify Petitioner had a lump the size of a golf ball on his head at the time of his arrest.

    b)    Petitioner received ineffective assistance of appellate counsel based on the failure to present police witnesses who testified at the motion for new trial hearing Petitioner had a lump the size of a golf ball on his head at the time of his arrest.

III.    Petitioner received ineffective assistance of appellate counsel based on the failure to raise on appeal the issue of trial court's denial of the jury pattern charge of defense of habitation.

(See generally doc. no. 1.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. -, 134 S. Ct. 1697, 1702 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. -, 135 S. Ct. 1372, 1376 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a

7

substantially higher threshold than whether it was correct. <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." <u>Nejad v. Att'y Gen., State of Ga.</u>, 830 F.3d 1280, 1289 (11th Cir. 2016) (citing <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-74 (2007)); <u>see also</u> <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Tharpe v. Warden</u>, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010)).

# III. DISCUSSION

### A. Petitioner Procedurally Defaulted the Claims in Ground II(b) That He Received Ineffective Assistance of Appellate Counsel.

#### 1. A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted). Furthermore, a petitioner's failure to

exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for

denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing

O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

> **2. Petitioner's Claims of Ineffective Appellate Counsel in Ground II(b) Are Procedurally Defaulted Under O.C.GA § 9-14-51.**

In Ground II(b), Petitioner argues appellate counsel was ineffective in failing to present the arresting officer's testimony at the motion for new trial hearing that Petitioner had a lump on his head by the time of his arrest, further bolstering Petitioner's contention he was injured by Brooks. Respondent argues this claim is procedurally defaulted because it is not based on new facts or new law and therefore would be barred as successive under O.C.G.A. § 9-14-51 if Petitioner were to attempt to raise it in a second state habeas petition. (Doc. no. 8-1, p. 11.)

Petitioner could have raised this issue during his state habeas proceedings. Indeed,

Petitioner's one ground for state habeas relief was based on appellate counsel's allegedly deficient performance. (See doc. nos. 9-1, 9-2.) Petitioner offers nothing indicating there were intervening facts or law preventing him from raising this claim previously.

Because this claim was not raised in the original state habeas proceedings and Petitioner would be procedurally barred if he attempted to raise it now in state court, it is procedurally defaulted and provides no basis for federal habeas relief. See O.C.G.A. § 9-14-51; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139; Chambers, 150 F.3d at 1327.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claims in Ground II(b), and the Miscarriage of Justice Exception Does Not Apply.

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S.__, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S._, 133 S. Ct. 1911, 1918 (2013); Martinez v. Ryan, 566 U.S._, 132 S. Ct. 1309, 1318-19, 1320-21 (2012).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496. In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." 569 U.S. -, 133 S. Ct. 1924, 1933 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner does not submit any new evidence showing he is probably innocent of the crime of which he was convicted. To the contrary, he submits the same evidence that he submitted at his motion for new trial hearing and the trial court rejected. Johnson, 692 S.E.2d at 576 n.1; (see also doc. no. 1, pp. 16-31).

Petitioner has presented no valid justification for failing to raise this claim in his state habeas proceedings, let alone something external to him that cannot be fairly attributed to

him. In addition, Petitioner can show neither prejudice resulting from the default nor that the claim is substantial, as he has offered no new information about his claims impacting the outcome of his case. Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of the claim in Ground II(b). Likewise Petitioner has not shown that a miscarriage of justice will occur if the Court does not consider this claim. Accordingly, this claim in the instant § 2254 petition has been defaulted and provides no basis for federal habeas relief.

      **B.**     **Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Ineffective Trial Counsel Claims in Grounds I and II(a) and Ineffective Appellate Counsel Claims in Grounds III.**

          **1.**    **Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters</u>, 46 F.3d at 1522). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are

arguably dictated by a reasonable trial strategy." <u>Devier v. Zant</u>, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697; <u>see</u> <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of <u>Strickland</u>, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of

the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exertcise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Woods, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

> **2.    The State Court's Application of Strickland to Grounds I and II(a) Was Not Objectively Unreasonable.**

In Grounds I and II(a), Petitioner argues his trial counsel was ineffective because he failed to (1) present evidence of Brooks's prior violent acts because he misunderstood the scope of rebuttal evidence the government could present pursuant to Chandler v. State, 261 Ga. 402, 405 S.E.2d 669 (1991), and (2) call the arresting officer who testified at the hearing for the new trial motion that Petitioner had a lump on the back of his head at the time of his arrest. (See doc. nos. 1, 11.) The Georgia Supreme Court found Petitioner's ineffective

assistance of trial counsel claims lacked merit under Strickland.  See Johnson v. State, 286

Ga. 787, 692 S.E.2d 575 (2010).

> ### a.    Failure to Present Evidence of Decedent's Prior Violent Acts.

First, Petitioner argues trial counsel misunderstood what rebuttal evidence of

Brooks's "peacefulness" the State could present pursuant to Chandler v. State, 261 Ga. 402,

405 S.E.2d 669 (1991), and based on that misunderstanding decided not to admit evidence of

a prior violent act by Brooks.  The Georgia Supreme Court found Petitioner was not

prejudiced under Strickland as to this claim, an adjudication on the merits that warrants the

deferential standard of review prescribed by § 2254(d).  See Blankenship v. Hall, 542 F.3d

1253, 1271 (11th Cir. 2008).

Under Chandler, "evidence of specific acts of violence by a victim against third

persons shall be admissible where the defendant claims justification."  Chandler, 261 Ga. at

407, 405 S.E.2d at 673.  However, where a defendant offers such evidence, the state may

introduce evidence of the decedent's peaceable character in rebuttal.  Austin v. State, 268 Ga.

602, 602, 492 S.E.2d 212, 213 (1997).  The state may only present evidence related to the

decedent's "reputation for peacefulness," not evidence about the decedent's general good

character.  See id. at 602, 214.

Petitioner contends most of the evidence the state intended to proffer was

inadmissible because the letters the state produced from witnesses they were planning to call

were mostly unrelated to Brooks's peacefulness.  (See doc. no. 11, p. 4.)  Based on these

letters, and his erroneous belief that the state could present specific examples of Brooks's

good character in rebuttal, trial counsel failed to present evidence of Brooks's specific violent acts toward third parties. (<u>Id.</u> at 4-5.) Petitioner argues these violent acts would have vastly outweighed any general reputation for peacefulness evidence the state could have produced. (<u>Id.</u>)

The Supreme Court correctly noted the content of the letters were distinct from the admissible testimony these witnesses could offer at trial. <u>Johnson</u>, 286 Ga. at 791-92, 692 S.E.2d at 579. Indeed, the content of the letters evidenced long-term relationships and a deep knowledge of Brooks's character. <u>Id.</u> As the Supreme Court noted, "[i]t was reasonable to expect that some or all of these people could have testified about his reputation for peacefulness, not just about his general good character." <u>Id.</u> at 792, 579. In fact, "[o]ne of the letters . . . described a specific instance of Brooks's peaceful character." <u>Id.</u>

Therefore, trial counsel's decision to not present evidence of Brooks's allege prior violent act because he did not want to open the door to evidence of Brooks's peaceful character was a reasonable, strategic trial decision and not deficient. Furthermore, Petitioner suffered no prejudice because there was ample evidence from multiple witnesses that Brooks acted violently toward Petitioner several times over the course of the night. Evidence of an additional, unrelated violent episode would have been unlikely to sway the jury, particularly if the government had rebutted it with evidence of Brooks's peacefulness.

Because trial counsel's performance was not deficient and Petitioner suffered no prejudice, the Georgia Supreme Court's decision was not an unreasonable application of <u>Strickland</u>, and the claim is without merit.

**b.** **Failure to Present a Police Officer as a Witness Who Could Have Testified Regarding a Lump on the Back of Petitioner's Head.**

Second, Petitioner argues trial counsel was ineffective for failing to present as a witness Officer Hobbs, a police officer who testified at the motion for new trial hearing that Petitioner had a lump the size of a golf ball on his head at the time he was transported to jail. The Georgia Supreme Court found Petitioner was not prejudiced under <u>Strickland</u> as to this claim, an adjudication on the merits that warrants the deferential standard of review prescribed by § 2254(d). <u>See</u> <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271 (11th Cir. 2008).

The Georgia Supreme Court found that even assuming trial counsel provided deficient performance in failing to call Officer Hobbs, Petitioner failed to establish prejudice. <u>Johnson</u>, 286 Ga. at 792, 692 S.E.2d at 579. It based this holding on three reasons: (1) there was already trial testimony from Petitioner, Heacock, and Sturkey that Brooks was aggressive and struck Petitioner on the head, (2) Petitioner could have obtained the lump during the "felony takedown" portion of his arrest, which Officer Hobbs conceded at the hearing, and (3) forensic evidence demonstrated Brooks was shot from a distance rather than, as Petitioner testified, during a struggle with Brooks while standing. <u>Id.</u> at 792, 579-80.

Petitioner characterizes as unreasonable the Supreme Court's findings that Petitioner could have received the lump during his arrest and that forensic evidence showed Brooks was shot from a distance. Far from being unreasonable, these finding are mere recitations of hearing and trial testimony.

At the motion for new trial, Officer Hobbs testified he did not initially arrest

Petitioner; he only transported Petitioner to jail. (Doc. no. 9-25, p. 16.) In fact, Officer Hobbs did not notice that Petitioner had a lump on the back of his head until Petitioner entered booking at the jail. (Id. at 17.) Officer Hobbs further testified that although he did not directly observe what caused the lump, it very well could have been administered during Petitioner's arrest. (Id. at 23.) Therefore, the Supreme Court's finding that Petitioner could have received the lump on his head from the felony takedown arrest was not unreasonable; rather, it was consistent with Officer Hobbs's testimony during the motion for new trial hearing.

Even ignoring the arrest and the distance from which Brooks was shot, the record contained ample evidence that Brooks was aggressive and violent on the night of his death. As the Supreme Court noted, "Heacock testified that Brooks said he was going to 'whip [Petitioner's] ass' and that Brooks hit [Petitioner] in the back of the head." Id. at 792, 579. The jury rejected this evidence in reaching its guilty verdict. As the Georgia Supreme Court rightfully concluded, there is not a "reasonable probability" the jury would have reached a different decision merely because of testimony by Officer Hobbs that Petitioner had a lump on his head at the time of his arrest. See Strickland v. Washington, 466 U.S. 668, 694 (1984).

Thus, Petitioner suffered no prejudice from trial counsel's failure to call Officer Hobbs, and the state habeas court did not apply Strickland unreasonably in denying this claim.

### 3. The State Court's Application of <u>Strickland</u> to Ground III Was Not Objectively Unreasonable.

Petitioner also argues appellate counsel was ineffective for failing to raise as error the trial court's refusal to charge the jury on the defense of habitation. The state habeas court found counsel's performance sufficient and Petitioner not prejudiced under <u>Strickland</u> as to this claim, an adjudication on the merits warranting the deferential standard of review prescribed by § 2254(d). <u>See</u> <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271 (11th Cir. 2008).

Petitioner's appellate counsel, Brian Steel, testified he reviewed the record and trial transcript and examined the most pertinent issues in Petitioner's trial. (Doc. no. 9-30, pp. 19-21.) Mr. Steel testified he addressed a broad swath of issues before narrowing them to the issues he ultimately raised. (<u>Id.</u> at 20-21.) He further testified he "treated [Petitioner] as [his] boss," researching every issue he found and Petitioner raised and sending his recommendation and supporting documentation on each issue's potential merit in writing for Petitioner to review. (<u>Id.</u> at 19-20.) Mr. Steel testified he decided not to argue on appeal that the trial court erred by failing to instruct the jury on the habitation defense because there was no violent entry into Petitioner's house and the defense did not apply. (<u>Id.</u> at 11.) This strategic decision was reasonable given the lack of violent entry into Petitioner's home. Indeed, it cannot be said that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690.

Under O.C.G.A. § 16-3-23, a person may only use threat or force to defend his or her home if "he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation." O.C.G.A. §16-3-23.

Furthermore, "[t]he entry [must be] made or attempted in a violent and tumultuous manner" and the person must reasonably believe "the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence." O.C.G.A. § 16-3-23(1).

Petitioner relies on the Georgia Supreme Court's decision in <u>Benham v. State</u>, 277 Ga. 516, 591 S.E.2d 824 (2004), for the proposition that failure to raise the defense of habitation in addition to self-defense can give rise to ineffective assistance of counsel. Petitioner's reliance on <u>Benham</u> is misplaced. Unlike in <u>Benham</u>, there was no violent entry into Petitioner's home. The evidence shows Brooks entered Petitioner's home without protest from Petitioner. Indeed, it was not until both Petitioner and Brooks were inside Petitioner's home for at least a short time that violence broke out.

There is also no evidentiary support for the argument that Petitioner reasonably believed Brooks entered the home to assault him because earlier Brooks told Petitioner he would "whip his ass." The Georgia Supreme Court correctly found there was no evidence of Petitioner having any knowledge of the threat. <u>Reese v. State</u>, 289 Ga. 446, 447–48, 711 S.E.2d 717, 720 (2011) ("Evidence that the victim was intoxicated and had cursed at [defendant] earlier that evening simply does not meet the statutory standard. . . ."); <u>see also</u> <u>Mays v. State</u>, 317 Ga. App. 24, 26-27, 730 S.E.2d 651, 654 (2012) ("Where there is no evidence that the victim was attempting to enter or attack (or did enter or attack) the defendant's habitation at the time he was injured by the defendant, the defense of use of force

in defense of habitation is not available."). Without violent entry and no basis for finding a reasonable belief of entry for the purpose of assault, the defense of habitation does not apply.

In addition, Petitioner fails to show how the trial court's failure to charge the jury on the defense of habitation changed the outcome of his case. The court charged the jury on self-defense, which the jury rejected, and it is unlikely the jury would have accepted Petitioner's weaker defense of habitation. Furthermore, even when a trial court errs by failing to charge the jury on the defense of habitation, it is not reversible error resulting in prejudice where, as here, the court does charge the jury on self-defense and justifiable homicide. McKee v. State, 280 Ga. 755, 756, 632 S.E.2d 636, 637 (2006). Given these factors, the Petitioner cannot show a "reasonable probability that instructing the jury on the law of defense of habitation would have resulted in a different outcome." Coleman v. State, 286 Ga. 291, 299, 687 S.E.2d 427, 436 (2009). Thus, Petitioner cannot show prejudice from appellate counsel's decision not to raise the trial court's failure to instruct the jury on the defense of habitation on appeal.

Because Petitioner cannot show an unreasonable decision by counsel or prejudice, the state habeas court's decision finding there was no ineffective assistance of appellate counsel was not an unreasonable application of Strickland, and Petitioner's argument does not present a basis for relief.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in

favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of February, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA